**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001336
21-DEC-2015
09:38 AM**

NO. CAAP-14-0001336

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

DISTRICT COUNCIL 50 OF THE INTERNATIONAL UNION OF
PAINTERS AND ALLIED TRADES AND ALOHA GLASS
SALES & SERVICE, INC., Plaintiffs-Appellants,
v.
CATHERINE P. AWAKUNI COLÓN[1], IN HER CAPACITY AS DIRECTOR,
DEPARTMENT OF COMMERCE AND CONSUMER AFFAIRS, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-3086)

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Fujise, JJ.)

Plaintiffs-Appellants District Council 50 of the
International Union of Painters and Allied Trades, and Aloha
Glass Sales & Service, Inc. (together, **DC 50**) appeal from the (1)
November 6, 2014 "Final Judgment" and (2) November 6, 2014 "Order
Affirming Board's Final Order Upon Remand," both entered in the
Circuit Court of the First Circuit[2] (**circuit court**).

On appeal, DC 50 contends the circuit court erred in:
(1) upholding the Department of Commerce and Consumer Affairs'
(**DCCA**) Contractors License Board (**CLB**) decision; (2) concluding
that the "window work at issue in the Lanakila Elementary School
Project . . . was 'incidental and supplemental' to the remodeling

---

[1]     Pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c)(1),
Catherine P. Awakuni Colón, the current Director of the Department of Commerce
and Consumer Affairs, has been substituted for Keali'i S. Lopez, the Director
at the time the case was decided by the circuit court.

[2]     The Honorable Rhonda A. Nishimura presided.

and repair work on the Project;" (3) holding that the CLB did not engage in rulemaking in violation of Hawaii Revised Statutes (**HRS**) chapter 91; and (4) failing to take judicial notice of six exhibits.

## I. BACKGROUND

A detailed background of this case is laid out in <u>Dist. Council 50, of Int'l Union of Painters and Allied Trades v. Lopez</u>, 129 Hawai'i 281, 298 P.3d 1045 (2013). As such, we provide only a brief summary of the background.

This case involves the State of Hawai'i's renovation project known as "Lanakila Elementary School Renovate and Paint Various Buildings [Department of Accounting and General Services (**DAGS**)] Job No. 52-16-5581" (**Lanakila Elementary Project**). <u>Id.</u> at 283, 298 P.3d at 1047. In March 2006, DC 50 filed a Petition for Declaratory Ruling that a "general building contractor with a B-license cannot engage in work requiring a C-22 subcontractor license under the general contractor's license." <u>Id.</u> at 285, 298 P.3d at 1049 (internal quotation marks and brackets omitted).

The CLB hearings officer found that "incidental and supplemental" in HRS § 444-8(c) (2013 Repl.)[3] meant "work in other trades directly related to and necessary for the completion of the project undertaken by a licensee pursuant to the scope of the licensee's license[,]" and recommended that the CLB deny the petition. <u>District Council 50</u>, 129 Hawai'i at 286, 298 P.3d at 1050 (quotations omitted). The CLB adopted the hearings officer's recommendation. <u>Id.</u>

---

[3] HRS § 444-8 provides, in relevant part:

**§444-8 Powers to classify and limit operations.**

. . . .

(c) This section shall not prohibit a specialty contractor from taking and executing a contract involving the use of two or more crafts or trades, if the performance of the work in the crafts or trades, other than in which the specialty contractor is licensed, is <u>incidental and supplemental</u> to the performance of work in the craft for which the specialty contractor is licensed.

(Emphasis added.)

The Hawai'i Supreme Court held that the CLB's interpretation of "incidental and supplemental" was plainly erroneous and inconsistent with the underlying legislative purpose of HRS chapter 444. Id. at 289-92, 298 P.3d at 1053-56. The supreme court vacated the circuit court's judgment affirming the CLB's order, and remanded the case to the CLB "to reconsider whether the jalousie window work qualified as 'incidental and supplemental' to the [Lanakila Elementary] Project in light of the cost and extent of work involved." Id. at 292, 298 P.3d at 1056.

On remand, the CLB discussed the supreme court's decision at its May 17 and July 18, 2013 meetings. On October 22, 2013, the CLB issued the "[CLB's] Final Order Upon Remand" (**Final Order**), which announced the CLB's "New Test to Determine When Specialty Contracting Work is 'Incidental and Supplemental.'" The CLB summarized the test as follows.

> [T]o qualify as "incidental and supplemental" work, that work must represent less than 50% of the project (as measured in relation to the project's total cost or extent), and the work must be subordinate to, directly related to, and necessary for the completion of the work of greater importance that is within the scope of the licensee's license (i.e., the primary work the specialty contractor is licensed to perform).

Applying the test to the Lanakila Elementary Project, the CLB found that "DC 50's cost estimate and percentages of the jalousie window work are less than a 'majority' of the total [Lanakila Elementary] Project cost." The CLB also found that "the jalousie window work was subordinate to, and is directly related and necessary for, the completion of the work of greater importance that is within the scope of the C-5 license." Finally, the CLB held that as an independent justification:

> [A]lthough the [Lanakila Elementary] Project required the fabrication and installation of the window frames and vinyl slats, this work could be undertaken by a C-5 licensee because of the method of window installation and the materials used, and that this work is not within the exclusive jurisdiction of the C-22 license. Thus, the [CLB] believes that either a C-5 or C-22 licensee could perform the jalousie window work on the [Lanakila Elementary] Project.

On November 6, 2014, the circuit court affirmed the CLB's Final Order. DC 50 filed its notice of appeal on December 2, 2014.

## II. STANDARD OF REVIEW

### A. Judicial Notice

"The appellate court applies 'two different standards of review in addressing evidentiary issues. Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only correct result, in which case review is under the right/wrong standard.'" Adams v. Yokooji, 126 Hawai'i 420, 423, 271 P.3d 1179, 1182 (App. 2012) (quoting State v. Ortiz, 91 Hawai'i 181, 189, 981 P.2d 1127, 1135 (1999)).

### B. Secondary Appeals

"Review of a decision made by a court upon its review of an administrative decision is a secondary appeal. The standard of review is one in which [an appellate] court must determine whether the court under review was right or wrong in its decision." Brescia v. North Shore Ohana, 115 Hawai'i 477, 491, 168 P.3d 929, 943 (2007) (internal quotation marks omitted) (quoting Leslie v. Bd. of Appeals of Cnty. of Hawaii, 109 Hawai'i 384, 391, 126 P.3d 1071, 1078 (2006)).

The standard of review that applies to the circuit court's review of an administrative proceeding is outlined in HRS § 91-14(g) (2012 Repl.), which states:

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1)  In violation of constitutional or statutory provisions; or
>
> (2)  In excess of the statutory authority or jurisdiction of the agency; or
>
> (3)  Made upon unlawful procedure; or
>
> (4)  Affected by other error of law; or

4

> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)." Brescia, 115 Hawaiʻi at 491, 168 P.3d at 943 (internal quotation marks omitted) (quoting Sierra Club v. Office of Planning, State of Hawaiʻi, 109 Hawaiʻi 411, 414, 126 P.3d 1098, 1101 (2006)).

> "'An agency's findings are not clearly erroneous and will be upheld if supported by reliable, probative and substantial evidence unless the reviewing court is left with a firm and definite conviction that a mistake has been made.'" Poe v. Hawaiʻi Labor Relations Bd., 105 Hawaiʻi 97, 100, 94 P.3d 652, 655 (2004) (quoting Kilauea Neighborhood Ass'n v. Land Use Comm'n, 7 Haw. App. 227, 229-30, 751 P.2d 1031, 1034 (1988)). "'[T]he courts may freely review an agency's conclusions of law.'" Lanai Co., [Inc. v. Land Use Com'n, 105 Hawaiʻi 296, 307, 97 P.3d 372, 383 (2004)] (quoting Dole Hawaii Div.-Castle & Cooke, Inc. v. Ramil, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990) (other citation omitted)). "Abuse is apparent when the discretion exercised clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." Kimura v. Kamalo, 106 Hawaiʻi 501, 507, 107 P.3d 430, 436 (2005) (internal quotation marks and citation omitted).

Brescia, 115 Hawaiʻi at 491-92, 168 P.3d at 943-44 (some brackets in original and some added).

### III. DISCUSSION

**A. Judicial Notice**

In its reply brief to the circuit court, DC 50 argued that the circuit court should take judicial notice of its exhibits A, B, E, F, G, and H. DC 50 asks this court to reverse the circuit court's decision regarding this evidence, and requests that this court take judicial notice of these exhibits.

Hawaii Rules of Evidence (**HRE**) Rule 201 (1993) governs judicial notice of adjudicative facts. HRE Rule 201(b) allows a court to judicially notice facts that are "not subject to

5

reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The court is required to take judicial notice of an adjudicative fact "if requested by a party and supplied with the necessary information." HRE Rule 201(d). "Judicial notice may be taken at any stage of the proceeding." HRE Rule 201(f).

Adjudicative facts "are the kind of facts that are ordinarily decided by the trier of fact; for example, who did what to whom, when, where, how, and why." State v. Puaoi, 78 Hawai'i 185, 190, 891 P.2d 272, 277 (1995); see HRE Rule 201 commentary; see also Fed. R. Evid. 201 advisory committee notes. HRE Rule 201 does not apply to legislative facts. See HRE Rule 201 commentary; Fed. R. Evid. 201 advisory committee notes. Legislative facts "are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201 advisory committee notes; see HRE Rule 201 commentary ("[J]udicial notice of legislative facts occurs when a judge is faced with . . . the interpretation of a statute[.]") (citation and internal quotation marks omitted).

DC 50 requested the circuit court, and now requests this court, to take judicial notice of facts that fall within the realm of legislative rather than adjudicative facts. DC 50's Exhibit A and B are H. Con. Res. 88, 27th Leg., Reg. Sess. (Haw. 2014) and H. Res. 63, 27th Leg., Reg. Sess. (Haw. 2014) respectively, which are both described as "ENCOURAGING THE [CLB] TO RECONSIDER ITS OCTOBER 18, 2013, FINAL ORDER AND FOLLOW LEGISLATIVE INTENT AND THE HAWAII SUPREME COURT'S RULING THAT THE 'INCIDENTAL AND SUPPLEMENTAL' EXCEPTION FOR SPECIALTY CONTRACTORS TO COMPLETE WORK FOR WHICH THEY ARE UNLICENSED IS VERY LIMITED IN SCOPE." Exhibit E is Stand. Comm. Rep. No. 1436-14 on H. Res. 63. Exhibit F is Stand. Comm. Rep. 1437-14 on H. Con. Res. 88. Exhibit G and H are printouts from the State of Hawai'i's legislative webpage tracking H. Res. 63 and H. Con. Res. 88.

6

These exhibits relate to the lawmaking process by a legislative body and are therefore legislative, not adjudicative, facts. It was not an abuse of discretion for the circuit court to decline to take judicial notice of the exhibits. We also decline to take judicial notice of these legislative facts.

We note that we need not take judicial notice of H. Res. 63 and H. Con. Res. 88 in order to consider their substance. Courts regularly consider extrinsic aids to determine legislative intent, including legislative history. See, e.g., First Ins. Co. of Hawaii v. A&B Props., 126 Hawai'i 406, 415-17, 271 P.3d 1165, 1174-76 (2012) (considering legislative committee reports elucidating the purpose of a bill in interpreting the relevant statute).

However, we decline to consider the exhibits as evidence of the Hawai'i legislature's intent behind the "incidental and supplemental" exception. H. Res. 63 and H. Con. Res. 88 were passed in 2014, years after HRS § 444-8 was enacted in 1957. "[T]he legislature has no power to direct the judiciary in the interpretation of existing statutes, since the legislative intent that controls is the construction of a statute which has reference to the legislature which enacted the act." Hot Springs Indep. Sch. Dist. No. 10 v. Fall River Landowners Ass'n, 262 N.W.2d 33, 39 (S.D. 1978) (citing 73 Am. Jur. 2d Statutes § 178); see Agran v. Checker Taxi Co., 105 N.E.2d 713, 715 (Ill. 1952) ("The legislature cannot direct the judiciary how cases shall be decided."); Bd. of Com'rs of Wyandotte Cnty. v. Gen. Sec. Corp., 138 P.2d 479, 487 (Kan. 1943) (concluding that a House bill purporting to declare the meaning of the legislature in enacting the statute was "unconstitutional because its provisions amount to an encroachment upon the judicial powers of the court by the legislature . . . .").

B. CLB's Interpretation of "Incidental and Supplemental"

DC 50 argues that the "CLB's new interpretation of the 'incidental and supplemental' exception as any work 'less than 50% of the project' . . . is as plainly erroneous and inconsistent with the underlying legislative purpose as its definition in [Hawaii Administrative Rules (**HAR**)] § 16-77-34,

7

which the [Hawai'i Supreme] Court rejected as 'plainly erroneous' . . . ." DC 50 contends the CLB Final Order is inconsistent with both HRS § 444-8(c) and the supreme court's holding in District Council 50.

The circuit court's "Order Affirming Board's Final Order Upon Remand" stated:

2.     The [CLB] and its October 22, 2013 [Final Order] was not clearly erroneous, contrary to law, or arbitrary or capricious and was consistent with the Hawaii Supreme Court's decision in [District Council 50].

a.     In [District Council 50], the Court determined that "incidental and supplemental" work "must not make up the majority of the project, and must instead be 'subordinate' and in addition to licensed work of 'greater importance'". The [Final Order] adopted this determination by the [District Council 50] court.

b.     The CLB and [Final Order] acknowledged the Court's requirement that the "cost and extent" of the other specialty contracting work must be considered when determining if such work is "incidental and supplemental". This is a reasonable interpretation of the Court's holding in [District Council 50].

3.     Consistent with the Supreme Court's decision in [District Council 50], the CLB and its [Final Order] correctly interpreted and complied with said decision in determining that the window work at issue in the [Lanakila Elementary Project] was "incidental and supplemental" to the remodeling and repair work on the [Lanakila Elementary] Project.

"The interpretation of a statute is a question of law which is freely reviewable by this court." DW Aina Lea Dev., LLC v. Bridge Aina Lea, LLC, 134 Hawai'i 187, 213, 339 P.3d 685, 711 (2014). "An agency's interpretation of its rule receives deference unless it is plainly erroneous or inconsistent with the underlying legislative purpose." District Council 50, 129 Hawai'i at 287, 298 P.3d at 1051 (quoting Hawaii Teamsters and Allied Workers, Local 996 v. Dept. of Labor and Indus. Relations, 110 Hawai'i 259, 265, 132 P.3d 368, 374 (2006)).

The supreme court in District 50 reviewed the CLB's initial determination that "incidental and supplemental" means "work in other trades directly related to and necessary for the completion of the project undertaken by a licensee pursuant to the scope of the licensee's license." District Council 50, 129 Hawai'i at 286, 298 P.3d at 1050 (citation and internal quotation

marks omitted). In interpreting the phrase "incidental and supplemental," the supreme court conducted a plain language analysis, finding that "the ordinary meaning of 'incidental and supplemental' is 'subordinate to something of greater importance and supplying something additional.'" Id. at 290, 298 P.3d at 1054. The supreme court noted, "the 'incidental and supplemental' work must not make up the majority of the project, and must instead be 'subordinate' and in addition to licensed work 'of greater importance.'" Id. The supreme court concluded:

> While HRS § 444-8(c) created a narrow exception for unlicensed work that is "subordinate to something of greater importance and supplying something additional," the [CLB's] expansive interpretation of the "incidental and supplemental" exception creates a loophole for C-5 contractors to complete unlimited amounts of specialty work for which they do not hold the requisite licenses. The [CLB's] refusal to consider cost and extent of work when determining whether that work qualifies as "incidental and supplemental" is plainly erroneous in light of the clear meaning of HRS § 444-8(c).

Id. at 291, 298 P.3d at 1055.

The supreme court noted the legislative purpose "behind contractor licensing laws in Hawai'i is to 'protect the general public against dishonest, fraudulent, unskillful or unqualified contractors.'" Id. at 291, 298 P.3d at 1055 (quoting Jones v. Phillipson, 92 Hawai'i 117, 125, 987 P.2d 1015, 1023 (App. 1999)). In light of this purpose, the supreme court stated that "[t]o protect public health and safety, the [CLB's] rules must ensure that fully qualified contractors are completing all major work involved in a particular project." District Council 50, 129 Hawai'i at 291, 298 P.3d at 1055. The supreme court concluded:

> In creating the "incidental and supplemental" provision in HRS § 444-8(c), the legislature crafted an exception for the completion of limited amounts of unlicensed work. This exception must be interpreted narrowly to preserve the statute's overarching purpose of protecting public safety by insuring that work is completed by fully competent contractors. In order to comply with this statutory provision, and the overall purpose of HRS chapter 444, the "incidental and supplemental" exception to the C-5 license must be similarly limited. By allowing C-5 specialty contractors to complete all work related to and necessary for the completion of a renovation project, regardless of cost and extent, the [CLB] is contravening the express purpose of HRS chapter 444.

Id. at 292, 298 P.3d at 1056. In remanding this case to the CLB, the supreme court instructed the CLB to "reconsider whether the jalousie window work qualified as 'incidental and supplemental' to the [Lanakila Elementary] Project in light of the cost and extent of work involved." Id.

On remand, the CLB determined, in relevant part:

In light of the Supreme Court's Opinion, the [CLB] acknowledges that the new test to determine whether specialty contracting work is "incidental and supplemental" requires a determination of whether such work is less than a "majority" of the project, and is "subordinate" and "in addition" to licensed work of "greater importance".

The [CLB] notes that although the Court did not define the term "majority" in its decision, the term is generally defined in well accepted dictionaries as a number or percentage greater than half of a total. See, e.g., Black's Law Dictionary 1040 (9th ed. 2009). Consequently, the [CLB] interprets the term "majority" in the Court's ruling to mean any amount greater than fifty per cent (50%).

The [CLB] also acknowledges the Court's requirement that the "cost and extent" of the other specialty contracting work must be considered when determining if such work is "incidental and supplemental". As a result, the [CLB's] consideration of the "cost and extent" of the other specialty contracting work will be factored into determining whether the work constitutes less than a "majority" of the project.

With respect to the requirement that the other specialty contracting work be "subordinate" and in addition to licensed work of "greater importance", the [CLB] notes that these terms do not appear to be compatible with the construction industry because one type of contracting work is normally not characterized as being more important than another type of contracting work. Regardless, the [CLB] determines that in general, the primary work involved on a construction project or in question will be considered to be of "greater importance" and other related work will be considered to be "subordinate".

. . . [T]he [CLB] also agrees that such [incidental and supplemental] work must also be "directly related to and necessary for the completion of the project undertaken by a licensee pursuant to the scope of the licensee's license" under its rule.

In summary, the [CLB] concludes that to qualify as "incidental and supplemental" work, that work must represent less than 50% of the project (as measured in relation to the project's total cost or extent), and the work must be subordinate to, directly related to, and necessary for the completion of the work of greater importance that is within the scope of the licensee's license (i.e., the primary work the specialty contractor is licensed to perform).

(Footnotes omitted.)

10

We agree with the circuit court's conclusion that the CLB and its Final Order were "not clearly erroneous, contrary to law, or arbitrary or capricious and was consistent with the Hawaii Supreme Court's decision in [District Council 50]."

**C. Rulemaking**

DC 50 argues that the CLB's Final Order is a rule promulgated in contravention of HRS § 444-4(2) & (3) (2013 Repl.)[4] and § 91-3 (2012 Repl.)[5].

---

[4]     HRS § 444-4 provides, in relevant part:

> **§ 444-4 Powers and duties of board.** In addition to any other powers and duties authorized by law, the board shall:
>
> . . . .
>
> (2)     Adopt, amend, or repeal such rules as the board may deem proper fully to effectuate this chapter and carry out the purpose thereof, which is the protection of the general public. All rules shall be approved by the governor and the director, and when adopted pursuant to chapter 91, shall have the force and effect of law. The rules may forbid acts or practices deemed by the board to be detrimental to the accomplishment of the purpose of this chapter. The rules may require contractors to make reports to the board containing any items of information as will better enable the board to enforce this chapter and rules, or as will better enable the board from time to time to amend the rules more fully to effectuate the purposes of this chapter. The rules may require contractors to furnish reports to owners containing any matters of information as the board deems necessary to promote the purpose of this chapter. The enumeration of specific matters which may properly be made the subject of rules shall not be construed to limit the board's general power to make all rules necessary fully to effectuate the purpose of this chapter;
>
> (3)     Adopt rules pursuant to chapter 91 necessary to implement the provisions of this chapter relating to [chlorofluorocarbons (**CFCs**)], including, but not limited to, procedures for the disposal of air conditioning units utilizing CFCs that include mandatory recovery and recycling of CFCs[.]

[5]     HRS § 91-3(a) provides, in relevant part:

> **§91-3 Procedure for adoption, amendment, or repeal of rules.** (a) Except as provided in subsection (f), prior to the adoption of any rule authorized by law, or the amendment or repeal thereof, the adopting agency shall:

Per HRS § 91-1(4) (2012 Repl.), a "rule" is an agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term

(1)  Give at least thirty days' notice for a public hearing. The notice shall include:

(A)  A statement of the topic of the proposed rule adoption, amendment, or repeal or a general description of the subjects involved; and

(B)  A statement that a copy of the proposed rule to be adopted, the proposed rule amendment, or the rule proposed to be repealed will be mailed to any interested person who requests a copy, pays the required fees for the copy and the postage, if any, together with a description of where and how the requests may be made;

(C)  A statement of when, where, and during what times the proposed rule to be adopted, the proposed rule amendment, or the rule proposed to be repealed may be reviewed in person; and

(D)  The date, time, and place where the public hearing will be held and where interested persons may be heard on the proposed rule adoption, amendment, or repeal.

The notice shall be mailed to all persons who have made a timely written request of the agency for advance notice of its rulemaking proceedings, given at least once statewide for state agencies and in the county for county agencies. Proposed state agency rules shall also be posted on the Internet as provided in section 91-2.6; and

(2)  Afford all interested persons opportunity to submit data, views, or arguments, orally or in writing. The agency shall fully consider all written and oral submissions respecting the proposed rule. The agency may make its decision at the public hearing or announce then the date when it intends to make its decision. Upon adoption, amendment, or repeal of a rule ,the agency, if requested to do so by an interested person, shall issue a concise statement of the principal reasons for and against its determination.

> include declaratory rulings issued pursuant to section 91-8, nor intra-agency memoranda.

HRS § 91-8 (2012 Repl.) provides:

> Any interested person may petition an agency for a declaratory order as to the applicability of any statutory provision or of any rule or order of the agency. Each agency shall adopt rules prescribing the form of the petitions and the procedure for their submission, consideration, and prompt disposition. Orders disposing of petitions in such cases shall have the same status as other agency orders.

DC 50 argues, "Because the CLB's new definitions of 'incidental and supplemental' are not limited to the particular facts of the case, but operate to 'delineat [sic] the future rights of an entire class of unnamed individuals'--i.e., all C-contractors in the abstract--the definitions are not a declaratory judgment." (Emphasis, citation, ellipsis, and brackets omitted.) DC 50 explains, "That definition of the statute's 'incidental and supplemental' exception affected not just the litigants but every C-contractor in the State of Hawai'i in every contract forever."

In response, the DCCA argues, and we agree, that the DC 50 had commenced the action as a "Petition for Declaratory Ruling" in 2006, thus exempting the CLB's decision from the definition of "rule" under HRS § 91-1. See District Council 50, 129 Hawai'i at 284-85, 298 P.3d at 1048-49 ("On or about March 24, 2006, [DC 50]. . . filed a Petition for Declaratory Ruling (Petition) with DCCA's [CLB]. The [CLB] referred the Petition to the Office of Administrative Hearings for further proceedings on April 26, 2006. The Petition was filed pursuant to [HRS] § 444-4(9) (1995) and HAR § 16-201-48 (1990)." (footnotes omitted)).

**D. CLB's Determination of the Lanakila Elementary Project**

DC 50 also challenges the CLB's finding that the C-22 glazing work on the Lanakila Elemenatary Project was "incidental and supplemental" to the primary contract work. .

The CLB's Final Order stated:

> [T]he [CLB] applied the Court's new "incidental and supplemental" test to the cost and extent of work figures provided by DC 50.
>
> First, a determination of whether the jalousie window work constitutes less than a "majority" of the [Lanakila Elementary] Project must be made. According to Exhibit "3"

13

of the Petition, Allied Pacific's overall bid to renovate the [Lanakila Elementary] Project was $1,258,000.00. Fifty percent of $1,258,000.00 is $629,000.00. DC 50's cost and extent of work estimate of $372,875.00 is clearly less than $629,000.00. In addition, DC 50's percentages of 20% to 25% are also clearly less than 50% of the overall [Lanakila Elementary] Project cost. Consequently, the [CLB] finds that DC 50's cost estimate and percentages of the jalousie window work are less than a "majority" of the total [Lanakila Elementary] Project cost.

Next, the [CLB] determines that the [Lanakila Elementary] Project's overall remodeling and repair work to the school's existing buildings or structures was the work of greater importance (i.e., the primary work or the primary component) of the [Lanakila Elementary] Project and thus, could be undertaken by a C-5 specialty contractor. The [CLB] also concludes that the jalousie window work was subordinate to, and is directly related and necessary for, the completion of the work of greater importance that is within the scope of the C-5 license.

Furthermore, and as an entirely independent justification for the jalousie window work being performed by a C-5 licensee, the [CLB] determines that although the [Lanakila Elementary] Project required the fabrication and installation of the window frames and vinyl slats, this work could be undertaken by a C-5 licensee because of the method of window installation and the materials used, and that this work is not within the exclusive jurisdiction of the C-22 license. Thus, the [CLB] believes that either a C-5 or C-22 licensee could perform the jalousie window work on the [Lanakila Elementary] Project.

Based on the foregoing, the [CLB] concludes that in light of the cost and extent of work involved, the jalousie window work at issue is "incidental and supplemental" to the remodeling and repair work on the [Lanakila Elementary] Project and thus, could be performed by a C-5 licensee.

(Footnote omitted.) The circuit court affirmed the CLB's findings, holding:

3. Consistent with the Supreme Court's decision in [District Court 50], the CLB and its [Final Order] correctly interpreted and complied with said decision in determining that the window work at issue in the [Lanakila Elementary Project] was "incidental and supplemental" to the remodeling and repair work on the [Lanakila Elementary] Project.

On appeal, DC 50 makes no additional arguments other than the ones presented in its challenge to the CLB's interpretation of HRS § 444-8. Therefore, following the analysis above, we affirm the circuit court's holding.

## IV. CONCLUSION

The (1) November 6, 2014 "Final Judgment" and (2) November 6, 2014 "Order Affirming Board's Final Order Upon

Remand" both entered in the Circuit Court of the First Circuit are affirmed.

DATED:  Honolulu, Hawai'i, December 21, 2015.

On the briefs:

Michael A. Lilly
Valerie M. Kato
(Ning, Lilly, & Jones)
for Plaintiffs-Appellants.

Deborah Day Emerson
Rodney J. Tam
Deputy Attorneys General
for Defendant-Appellee.

Chief Judge

Associate Judge

Associate Judge